IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JUSTIN KRAFT and KRAFT PIANO
SERVICES, LLC,

                    Plaintiffs,

v.

DENNIS ARDEN, Individually; NEW
OCTAVE CORPORATION, a domestic
corporation and d/b/a/ INTERNATIONAL
PIANO SUPPLY; and INTERNATIONAL
PIANO SUPPLY, INC., a domestic
corporation,

                    Defendants.

CV. 07-487-PK

OPINION AND ORDER

PAPAK, Magistrate Judge:

       This matter is before the court on plaintiffs' opposition to defendants' Motion for

Attorney Fees (#73) and Bill Of Costs (#76).  For the reasons set forth below, defendants'

Motion for Attorney Fees is granted in part and denied in part.  Defendants are awarded costs in

the amount of $2,974.13.

### STATEMENT OF FACTS

Page 1 - OPINION AND ORDER

In April 2007, plaintiffs Justin Kraft and Kraft Piano Services, LLC brought suit alleging claims for interference with business relations against Dennis Arden and breach of contract against defendants International Piano Supply, New Octave Corporation, Dennis Arden and Alice Rice.   Justin Kraft is Kraft Piano's sole member and investor.  Before 2006, New Octave and International Piano were two divisions of the same corporation, operating under the name New Octave.  In 2006, International Piano became a separate corporation, owned by New Octave.  Defendants Arden and Rice are officers of New Octave.

Plaintiffs' breach of contract cause of action arose out of discussions between Justin Kraft, acting as a representative for Kraft Piano Services, and Dennis Arden, acting as a representative of New Octave.  In the original complaint, the alleged contract concerned  "the purchase of Arden's retail piano supply business."  The discussions took place in 2004 and 2005, before International Piano became a separate entity.  The complaint alleged Arden and Rice did business as International Piano Supply and recognized that International Piano was not incorporated until 2006.  It further recognized that Arden and Rice were officers of New Octave, and alleged New Octave was the parent company of International Piano.  Plaintiffs had a copy of a non-compete agreement, written on New Octave letterhead, which provided that Kraft would not compete with New Octave, or share any information obtained from Arden or Rice concerning International Piano and New Octave.  Plaintiffs also had a proposed agreement for the sale of International Piano, signed by Alice Rice, as vice-president of New Octave.

Plaintiffs' intentional interference with business relations claim arose out of discussions between Kraft and Mears regarding the purchase of Mears' piano dehumidifier wholesale business.  The complaint alleged that Arden told Mears that he had a court order restraining

Kraft from entering into an agreement with Mears.  At the time they filed the complaint,

Plaintiffs had an affidavit from Mears in which he asserted that Arden had threatened him with a

restraining order.

Defendants' answer to the complaint included a counterclaim for attorney fees on

plaintiffs' intentional interference with business relations claim, on the ground that the claim

lacked an objectively reasonable basis.  Plaintiffs' reply to the counterclaim denied defendants'

allegations.

The parties conducted depositions in January and February of 2008.  During the

deposition of Mears, he recanted his earlier affidavit.  Mears indicated that he had confused a

restraining order with a non-compete agreement and Arden had only mentioned a non-compete

agreement.  Kraft, in his deposition, testified that there was never an agreement to sell the

business and the agreement was actually for a distributorship.  In March 2008, defendants

offered to settle the case with plaintiffs for a nominal sum.  Plaintiffs refused defendants' offer.

In June 2008, plaintiffs filed a first amended complaint, which asserted claims for

interference with business relations against Arden and breach of contract against Arden,

International Piano and New Octave Corporation.  The complaint dropped the allegations against

Alice Rice.  It left the allegations regarding the intentional interference claim unchanged, but

changed the breach of contract cause of action to allege that the contract was for a

distributorship, as Kraft had testified during his deposition, not a contract for sale, as earlier

alleged.

Defendants' answer to the first amended complaint againt alleged a counterclaim for

attorney fees on plaintiffs' intentional interference with business relations claim.  Plaintiffs did

not file a reply to that pleading.

On November 7, 2008, I granted defendants' motion for summary judgment. I granted summary judgment on the breach of contract claims against International Piano and Arden because plaintiffs did not offer any evidence to support their responsibility for the alleged breach. I granted New Octave's motion for summary judgment on the breach of contract claim because the plaintiffs did not present evidence of mutual assent to the purported oral agreement and could not overcome Oregon's Statute of Frauds. Additionally, I held that plaintiffs could not prevail on their alternative promissory estoppel theory because the alleged promise was too illusory to induce foreseeable reliance and so indefinite that plaintiffs could not prove breach. I granted summary judgment on the intentional interference with business relations claim because plaintiffs did not establish improper means, causation or damages.

## LEGAL STANDARD

### I.    Attorney Fees

Under Oregon law,[1] "the court shall award reasonable attorney fees to a party against whom a claim . . . is asserted, if that party is a prevailing party in the proceeding and to be paid by the party asserting the claim . . . upon a finding by the court that the party willfully disobeyed a court order or that there was no objectively reasonable basis for asserting the claim." Or. Rev.

---

[1] This court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Federal courts apply state law in diversity actions with regard to the allowance or disallowance of attorney fees. *Schulz v. Lamb*, 591 F.2d 1268, 1273 (9th Cir. 1978); *Leif's Auto Collision Ctrs., LLC v. Am. Family Ins. Group, Inc.*, No. 06-1485, 2007 U.S. Dist. LEXIS 78811, at *4 n.1 (D. Or. Oct. 22, 2007).

Stat. § 20.105(1).[2]  "[A] trial court must enter findings when it either grants or denies a motion

for attorney fees under ORS 20.105(1)."  *Staten v. Steel*, 222 Or. App. 17, 42, 191 P.3d 778

(2008).

## II.    Bill of Costs

Federal Rule of Civil Procedure 54(d) provides that, "[u]nless a federal statute, these

rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to

the prevailing party."  Fed. R. Civ. P. 54(d)(1).  "Rule 54(d) creates a presumption for awarding

costs to prevailing parties; the losing party must show why costs should not be awarded."  *Save*

*Our Valley v. Sound Transit*, 335 F.3d 932, 944-945 (9th Cir. 2003).  "A district court need not

give affirmative reasons for awarding costs; instead, it need only find that the reasons for

denying costs are not sufficiently persuasive to overcome the presumption in favor of an award."

*Id.*  at 945.

Title 28 U.S.C. § 1920 enumerates the expenses a federal court may tax as costs under

Rule 54(d).  *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441-445 (1987).

Although a district court has broad discretion to allow or disallow a prevailing party to recoup

the ordinary costs of litigation, the court may not rely on that discretion to tax costs beyond those

authorized by § 1920.  *Id.; see also Frederick v. City of Portland,* 162 F.R.D. 139, 142 (D. Or.

1995).  Courts, however, are free to construe the meaning and scope of the items enumerated as

taxable costs in § 1920.  *Alflex Corp. v. Underwriters Lab., Inc.*, 914 F.2d 175, 177 (9th Cir.

---

[2] An earlier version of the statute applied a bad faith standard.  *Steelman-Duff, Inc. v.
State*, 323 Or. 220, 224 n.2, 915 P.2d 958 (1996).  Section 20.105 was amended in 1995,
however, and no longer contains a bad faith requirement.  *Shelton & Shelton,* 196 Or. App. 221,
234 n.8, 100 P.3d 1101 (2004).

1990) (per curiam).

## DISCUSSION

**I.      Attorney Fees**

A party seeking to recover attorney fees under Oregon Revised Statute § 20.105(1) "must satisfy two conjunctive conditions: 1) the party must be 'a prevailing party in the proceeding'; and 2) the party must demonstrate that there was no 'objectively reasonable basis' for the adversary's claim or defense." *Mantia v. Hanson*, 190 Or. App. 36, 77 P.3d 1143 (2003). Here, the parties do not dispute that defendants prevailed in the proceeding. Rather, plaintiffs argue that the court should deny defendants' motion on procedural grounds because defendants did not include the amount of attorney fees they seek. Additionally, the parties dispute whether plaintiffs' claims lacked an objectively reasonable basis.

**A.      Attorney Fee Amount Not Required**

Plaintiffs assert that defendants' motion for attorney fees is fatally flawed because it did not include a statement of the amount of fees sought. Plaintiffs rely on Oregon Rule of Civil Procedure 68C(4)(a)(1), which requires that a party seeking an award of attorney fees provide a detailed statement of the amount of fees. Plaintiffs overlook, however, that federal law governs matters of procedure. *See, .e.g., Shakey's Inc. v. Covalt Enter., Inc.*, 704 F.2d 426, 435 (9th Cir. 1983) (construing Oregon law with regard to whether party entitled to attorney fees but applying federal law to the trial court's procedural decision not to hold an evidentiary hearing). Thus, the Federal Rules of Civil Procedure govern defendants' motion here.

Under Federal Rule of Civil Procedure 54(d)(2)(C), "[t]he court is explicitly authorized to make a determination of the liability for fees before receiving submissions by the parties bearing on the amount of an award." Fed. R. Civ. P. 54(d)(2)(C) advisory committee note

Page 6 - OPINION AND ORDER

(1993).  Local Rule 54.3(c) provides that, "[u]nless otherwise directed by the Court," a hearing

on a motion for attorneys' fees will not segregate the liability for attorneys' fees from the amount

of fees.  Here, defendants' motion for attorney fees requested the court's permission to proceed

solely on the issue of liability.  The defendants' request is reasonable in light of the fact that

several defendants seek fees and, in the event that only some of the defendants are entitled to

fees, a determination of liability saves time spent in documenting the amount of fees for each

defendant.  I therefore grant defendant's request.  Accordingly, defendants' decision to not

include an amount of fees is not fatal to their motion.

### B.    Objectively Reasonable Basis

Under ORS 20.105(1), courts determine whether a party had an objectively reasonable

basis for asserting a particular claim by examining whether the claim is "entirely devoid of legal

or factual support at the time it was made."  *Lenn v. Bottem*, 221 Or. App. 241, 248, 190 P.3d

399 (2008) (internal citations omitted).  Thus, a party may have grounds for a motion for

attorney fees even if the party was later dismissed from the action.  *See Riddle v. Eugene Lodge

No. 357 of Benevolent & Protective Order of Elks*, 95 Or. App. 206, 218, 768 P.2d 917 (1989).

Moreover, "attorney fees may be appropriate when a party continues to litigate a claim after facts

emerge that make the claim objectively unreasonable."  *Dimeo v. Gesik*, 197 Or. App. 560, 562,

106 P.3d 697 (2005).

As part of its analysis of whether a party had an objectively reasonable basis for a claim,

the court may examine whether there was a valid legal basis for joining a particular defendant.

*See, e.g., Portland Dev. Comm'n v. CH2M Hill N.W., Inc.,* 92 Or. App. 43, 49, 785 P.2d 353

(1988).  With regard to whether a particular claim lacked a reasonable basis, the court inquires

whether the evidence lends "at least some support to each element of the claim."  *Lenn*, 221 Or.

Page 7 - OPINION AND ORDER

App. at 249.  Weak evidence, or evidence rebutted by other evidence in the record, suffices to meet this threshold.  *See Scott*, 162 Or. App. at 231.  A plaintiff's testimony alone, however, is insufficient to support a claim as objectively reasonable where other evidence directly contradicts that testimony and thus demonstrates that plaintiffs' position was untenable.  *See Lenn*, 221 Or.  App. at 250 (plaintiffs testimony that they believed they owned the property at issue was directly contradicted by a permit application that showed they knew the property lay beyond their boundary line).

Here, as an initial matter, plaintiffs contend that their claims had an objectively reasonable basis because they prevailed on two proposed claims that were never included in the litigation.  When plaintiffs initially moved to amend their complaint, they sought to add two additional claims, totaling approximately $600 in damages, arising from an unpaid invoice and a failure to credit a payment plaintiffs made to the defendants.  Defendants settled these claims before plaintiffs filed their amended complaint.

Plaintiffs' argument is unpersuasive.  The case plaintiffs cite in support of their contention, *Seely v. Hanson*, did not construe Oregon Revised Statute § 20.105 but instead applied Oregon Rule of Civil Procedure 17, which addresses sanctions for frivolous filings. 317 Or. 476, 483 & n.11, 857 P.2d 121 (1993).  Moreover, *Seely* left open the question of "whether a single merited claim, surrounded by a plethora of meritless claims, might be a basis for a finding of improper purpose" under that rule.  *Id.* at 483 n.11.  More importantly, the proposed claims plaintiffs rely on were settled before they became a part of this action.  Accordingly, they do not bear on the question of whether the claims the plaintiffs did assert were supported by an objectively reasonable basis.

Page 8 - OPINION AND ORDER

### 1.    Defendant New Octave Corporation

In the breach of contract claim against New Octave, the court granted summary judgment because the alleged promise was too indefinite to support foreseeable reliance and breach. Plaintiffs alleged and presented evidence that New Octave had made a promise and that they made substantial investments in reliance on that promise.  A question of fact existed regarding whether New Octave promised Kraft Piano an exclusive distributorship or merely a distributorship, as Justin Kraft and Dennis Arden's testimony conflicted on that issue.  I found, however, that the question of fact was immaterial because, even if the promise was for an exclusive distributorship, it was too indefinite to form the basis for promissory estoppel.

In reaching my conclusion on New Octave's motion for summary judgment on the breach of contract claim, I canvassed Oregon case law but did not find a case that directly addressed an indefinite promise between parties negotiating at arms' length.  Rather, several Oregon courts had upheld promissory estoppel claims arising from indefinite promises by employers to their employees.  Thus, although plaintiffs' breach of contract claim was weak, it was not "totally devoid" of legal or factual support.  *See Scott v. Harold Barclay Logging Co.*, 162 Or. App. 228, 231, 987 P.2d 17 (1999) (reversing trial court's award of attorney fees where plaintiffs claim was not devoid of factual support).  Accordingly, I find that plaintiffs' breach of contract claim against New Octave had an objectively reasonable basis and therefore deny New Octave's motion for attorney fees.

### 2.    Defendant International Piano Supply

The original complaint and first amended complaint in this action both acknowledged that International Piano supply was not incorporated as a separate entity until September of 2006, after the events giving rise to plaintiffs' breach of contract claim.  As a result, plaintiffs did

Page 9 - OPINION AND ORDER

not present evidence to support that International Piano Supply, as a separate corporate entity, was liable for the breach of contract.  At the same time, International Piano did business as New Octave during the events in question and Kraft testified he was uncertain of the relationship between New Octave and International Piano at that time.  Kraft also indicated that he was unsure when Arden acted as a representative of New Octave or International Piano, or both.

I conclude that International Piano Supply is not entitled to attorney fees. While plaintiffs did not have evidence to suggest that International Piano was liable as a separate corporate entity, they had evidence of International Piano's involvement as a division of New Octave. More importantly, because International Piano did business as New Octave during the events in question, its defense of this action inevitably overlapped with New Octave's defense.  I denied New Octave's motion for attorney fees and therefore accordingly deny International Piano's motion.

### 3.    Defendant Rice

Plaintiffs dismissed the claims against Rice after they deposed her but before summary judgment.  Plaintiffs contend that they needed to depose Rice to ascertain her involvement before they dismissed her from the action.  Plaintiffs' original complaint, however, alleged that Rice was "d/b/a International Piano Supply" and recognized that she served as an officer of New Octave Corporation but made no factual allegations to support her personal responsibility.  The non-compete agreement and the proposed sales agreement did not suggest that Rice acted in any capacity other than as a corporate officer of New Octave.  Moreover, the undisputed evidence before the court on summary judgment demonstrated that plaintiffs knew that a corporate entity was the principal in the negotiations that gave rise to the breach of contract claim.

I conclude that plaintiffs had no legal or factual support for their breach of contract claim

Page 10 - OPINION AND ORDER

against Rice. *See Marlow v. The Greenline Enter., Inc.*, 106 Or. App. 103, 106, 806 P.2d 180 (1991) (finding that a claim was meritless because it sought to hold the officer responsible for the acts of the corporation but failed to plead any theory of personal responsibility); *see also Mattiza v. Foster*, 311 Or. 1, 8, 803 P.2d 723 (1990) ("[A] claim . . . is meritless when it is entirely devoid of legal or factual support at the time it was made."). I accordingly grant Rice's motion for attorney fees.

### 4.    Defendant Arden

Plaintiffs pursued claims for breach of contract and intentional interference with business relations against Arden.

#### a.    Breach of Contract

Similar to the breach of contract claims against Rice, plaintiffs neither pled nor presented any evidence to support Arden's personal responsibility for the alleged breach. Although plaintiffs claimed that Arden acted as an agent for an undisclosed principal, the undisputed evidence presented in the motion for summary judgment demonstrated that plaintiffs knew that Arden acted on behalf of New Octave and its International Piano division. In addition, as Arden demonstrated in defendants' motion for summary judgment, plaintiffs neither pled nor presented evidence that Arden had engaged in improper conduct that would justify piercing the corporate veil. I therefore find that plaintiffs lacked an objectively reasonable basis for their breach of contract claim against Arden and accordingly grant Arden's motion for attorney fees on that claim.

#### b.    Intentional Interference With Business Relations

To prevail on a claim for intentional interference with business relations, a plaintiff must establish: 1) the existence of a valid prospective or existing contract or business relationship; 2)

Page 11 - OPINION AND ORDER

intentional interference with that relationship; 3) by a third party; 4) accomplished through improper means or for an improper purpose; 5) a causal effect between the interference and the harm to the relationship or contract; and 6) damages. *McGanty v. Staudenraus*, 321 Or. 532, 535, 901 P.2d 841 (1995).

Here, I granted Arden's motion for summary judgment on plaintiffs' claim for interference with business relations because plaintiffs failed to present sufficient evidence of improper means or improper purpose, causation and damages. At the time they filed the complaint, plaintiffs had an affidavit from Mears that indicated Arden told him that he had he had a restraining order against Kraft and that Mears decided not to sell to Kraft until the restraining order matter was resolved. During Mears' deposition, Mears explained that he meant to say that Arden threatened to exercise his rights under the non-compete agreement. Moreover, Mears testified that Kraft himself told him about the non-compete agreement. In my ruling, however, I noted that Arden's alleged threat to exercise the non-compete agreement could constitute improper means if the agreement was an unlawful restraint of trade, but that plaintiffs did not argue that point. Thus, I conclude that plaintiffs had some evidence to support improper means and causation.

My ruling granting Arden's motion for summary judgment on the interference claim also noted that plaintiffs provided insufficient evidence of damages. Plaintiffs asserted that the interference deprived them of an opportunity to mitigate damages in the breach of contract claim because, had the deal proceeded without interference, Kraft Piano would have been able to use the infrastructure it acquired in reliance on New Octave's alleged promise. Mears testified, however, that plaintiffs would have operated at a loss. I am at a loss as to why plaintiffs did not rebut Mears' testimony with an explanation of how the sale would have benefitted Kraft Piano.

Page 12 - OPINION AND ORDER

Based on the record before me, I cannot say that Kraft had no evidence of damages whatsoever, and instead conclude the lack of an explanation of damages is likely the result of the oversight (or overconfidence) of Kraft's counsel. Accordingly, I conclude that the interference with business relations claim had an objectively reasonable basis.

### c. No Default for Failure to Respond to Amended Answer and Counterclaim

Defendants contend that plaintiffs admitted the counterclaim for attorney fees set forth in their answer to the amended complaint because the plaintiffs failed to reply to that counterclaim. The amended counterclaim, however, included the same allegations as the counterclaim for attorney fees in defendants' original answer. "When an amended pleading does not add new parties, new claims, or significant new factual allegations, courts are often willing to allow the previously filed response to the original pleading suffice." 3 Moore's Federal Practice - Civil § 15.17 (2008); *see also Stanley Works v. Syndergeneral Corp.*, 781 F. Supp. 659, 664-65 (C.D. Cal. 1990). I accordingly find that plaintiff's reply to defendants' original counterclaim suffices.

## II. Bill of Costs

The costs enumerated in 28 U.S.C. § 1920 include fees of the clerk and marshal and printing fees. 28 U.S.C. § 1920(1), (3). Enumerated costs also include fees "for printed or electronically recorded transcripts" and fees "for exemplification and the costs of making copies", so long as those fees were "necessarily obtained for use in the case." 28 U.S.C. § 1920 (2), (4). Here, defendants seek to recover costs for court and deposition fees, computerized legal research, scans and photocopies, courier and express mail fees, and fax and telephone fees.

### A. Court Fees

The first subdivision of 28 U.S.C. § 1920 permits taxation of the "[f]ees of the clerk and

marshal." 28 U.S.C. § 1920(1). The clerk's fees are established by 28 U.S.C. § 1914, which permits the clerk to collect fees authorized by the Judicial Conference of the United States. 28 U.S.C. § 1914. The District of Oregon charges a $100 fee for special admission pro hac vice. The courts are split, however, on whether the fees for filing a pro hac vice motion are taxable as fees of the clerk. Robert E. Jones, et al., Federal Civil Trials and Evidence § 19.103 (2008); *see also Berry v. Hawaiian Express Serv.,* No. 03-00385, 2006 U.S. Dist. LEXIS 78281 at *51 (D. Haw. Oct. 25, 2006) (including pro hac vice fees for the admission of two attorneys as taxable costs) *but see Arndt v. Mokai Mfg.*, No. 03-1240, 2006 U.S. Dist. LEXIS 36189, at *1 (D. Or. June 2, 2006) (referring to pro hac vic fees as "not recoverable" where defendants sought $350 for filing fee costs but incurred only pro hac vice fees totaling $200).

Defendants are entitled to $100 of the $324 they seek in district court fees. I conclude that the $100 defendants seek in pro hac vice fees may be taxable as costs. Defendants admit that they erred in including a $189 filing fee and I therefore subtract that from the $324 total. The remaining $35 of the $324 is a June 4, 2008 court fee for a "hearing fee petition to enforce subpoenas." Defendants filed a motion to compel on June 5, 2008, but I am unaware of any fee that defendants would incur in filing the motion. Accordingly, I exclude the $35 from the taxable costs.

**B.    Deposition Fees**

Under § 1920(2), the prevailing party may recover costs incurred in obtaining copies of deposition transcripts. *Alflex Corp.*, 914 F.2d at 177; *see also Independent Iron Works, Inc. v. United States Steel Corp.*, 322 F.2d 656, 678 (9th Cir. 1963). However, before allowing recovery for deposition transcript costs, the court must determine whether the transcript was "necessarily obtained for use in the case." 28 U.S.C. § 1920(2). A party cannot recover costs for

Page 14 - OPINION AND ORDER

depositions that are purely investigative or solely for the convenience of counsel. *Frederick*, 162
F.R.D. at 143.  However, "[a] deposition need not be absolutely indispensable to justify an award
of costs; rather, it must only be reasonably necessary at the time it was taken, without regard to
later developments that may eventually render the deposition unneeded at the time of trial or
summary disposition." *Id.*

Here, Kraft seeks $2,874.13 in deposition fees for the transcripts of the depositions of
Kraft, Arden, Mears and Rice.  Plaintiffs object that defendants should not be able to recover
costs in obtaining the transcript of Rice's deposition because she was their own party.
Defendants obtained the Rice deposition transcript in March 2008, before plaintiffs dismissed
her as a party to the suit and before the dispositive motion deadline.  Plaintiffs used Rice's
deposition in responding to defendants' motion for summary judgment, and, if the case had
proceeded to trial, defendants could have used their copy of the deposition to hold possible
impeachment within proper limits.  *See Independent Iron Works, Inc.*, 322 F.2d at 679.
Therefore, I conclude that defendants are entitled to recover the full $2,874.13 they seek to
recover for deposition costs.

### C.    Fees for Computerized Legal Research, Scans and Photocopies

Section 28 U.S.C. § 1920(4) permits a prevailing party to recover "fees for
exemplification and copies of papers necessarily obtained for use in the case."  28 U.S.C. §
1920(4).  This section covers copying costs for documents produced in discovery, submitted to
the court for consideration of motions, and used as exhibits at trial.  *Kibbee v. City of Portland*,
No. 98-675, 2000 U.S. Dist. LEXIS 17205, at * 13 (D. Or. Oct. 12, 2005) (citing *Fressell v.
AT&T Technologies, Inc.*, 103 F.R.D. 111, 115-116 (N.D. Ga 1984)).  A party cannot, however,
recover costs for copies prepared for the convenience of the attorneys.  *Arboireau v. Adidas*

Page 15 - OPINION AND ORDER

*Salomon AG*, No. 01-105, 2002 WL 31466564, at *6 (D. Or. June 14, 2003)  Moreover, a party's conclusory assertion that all copies were reasonably and necessarily obtained is, by itself, insufficient.  *Id.*

Here, defendants seek $768.88 in photocopy expenses and $79.17 in scanning costs. Plaintiffs object on the grounds that the photocopying and scanning fees are unreasonable. While I recognize that this case proceeded through discovery and involved several motions, including defendants' motion for summary judgment, I cannot conclude that the photocopy expenses incurred in this case were reasonable.  Defendants give no indication as to the number of scans or copies made, or the rate charged per page, what was copied or scanned, or the reasons for those scans or photocopies.  Absent this showing, I deny defendants' bill for $848.05 in exemplification costs, with leave to amend.

Defendants also seek an additional $1,497.66 in fees for "computerized legal research." Charges for computerized legal research do not fall within scope of costs recoverable under 28 U.S.C. § 1920.  *See Trs. of Constr. Indus. & Laborers Health & Welfare Trust v Redland Ins. Co.* 460 F.3d 1253, 1257-58 (9th Cir. 2006) (holding that charges for computerized legal research could be recovered under 29 U.S.C. § 1132(g)(2)(D), even though they did not fall within scope of 28 U.S.C. § 1920); *Frederick*, 162 F.R.D. at 144-45 (legal research fees not allowed as costs; citing cases).  Upon close examination, however, $9.92 of the fees listed as "computerized legal research" are for copies from the Public Access to Court Electronic Records Service Center.  Defendants may recover those fees as copying costs if defendants decide to amend their bill of costs for exemplification fees.  Defendants cannot, however, recover the remaining $1,487.74 in computerized research fees.  In conclusion, I deny defendants' bill for exemplification costs with leave to amend to set forth the number of scans and copies, or the

Page 16 - OPINION AND ORDER

price per page, and the reasons for the scans or copies.

**D.      Fax, Telephone, Courier and Express Mail Fees**

Costs for courier, mail, telephone, and fax charges are outside the scope of § 1920.  *See*

*Tasakos v. Welliver Mental Products Corp.,* No. 04-6205, 2005 WL 627633, at * 2 (D. Or. Mar.

16, 2005) (citing cases).  I accordingly deny the $14.25 defendants seek for messenger services,

the $42.39 they seek for fax charges, the $190 they seek in telephone charges and the $53.20

they seek for express mail fees.

**CONCLUSION**

The court grants in part and denies in part Defendants' Motion for Attorney Fees (#73).

Defendants New Octave Corporation and International Piano Supply are not entitled to fees.

Defendant Rice is entitled to fees.  Defendant Arden is entitled to fees in his defense of the

breach of contract cause of action but is not entitled to fees in his defense of the intentional

interference with business relations claim.  Defendants' counsel must provide an attorney fee

statement that explains how they apportioned the time spent on the breach of contract claims

against Rice and Arden from the time spent on the other defendants and the intentional

interference claim against Arden.

On Defendants' Bill of Costs (#76), defendants are allowed the sum of $2,974.13 as

taxable costs, calculated as follows:

| Cost Description | Amount |
|---|---|
| Fees of the clerk for pro hace vice admittance | $100.00 |
| Deposition fees | $2,874.13 |
| **Total** | $2,974.13 |

Page 17 - OPINION AND ORDER

Defendants have leave to amend their bill of costs for exemplification fees as directed in this opinion.

IT IS SO ORDERED.

Dated this 8th day of January, 2009.

 /s/ Paul Papak_____
Honorable Paul Papak
United States Magistrate Judge